The next case on the docket is Agenda No. 10, No. 125262, Dale Gillespie et al. v. Robert Edmier, East Manufacturing Corporation. Ms. Jansen, when you're ready. Good morning. Good morning. May it please the Court, I am Kim Jansen here on behalf of East Manufacturing Company. Before I dive into the legal issues before the Court, I just wanted to touch on a couple of the underlying facts that I think needed some clarification. First, the issue of whether this is a custom trailer. The steps installed on the trailer are indeed a standard feature on these types of dump trailers, but the trailer itself is custom-built. They're built to order based on specifications provided by the customer. So in this case, Ken's was the customer for East, provided specifications regarding the height of the trailer, the length of the trailer, the type of suspension, the type of controls, the type of tailgate, et cetera, et cetera. So this is a custom-built trailer. It is not a dry-bulk trailer. And there's some mention in plaintiff's brief suggesting that East's expert agreed that it was a dry-bulk trailer. That is not accurate. The first testimony that he points to is Whitney Morgan. That's Trail Quest and the Ed Meyers expert, not ours. But more importantly, the testimony Mr. Morgan provided in answer to a question was, could you describe this as a dry-bulk trailer? He says, I think that's fair. And if you go toward to the end of his deposition, plaintiff's counsel wanted to clarify, what do you mean when you say that's fair? Because he answers a lot of questions in his deposition, that's fair. And Mr. Morgan explains, yeah, when I say that's fair, it means I don't really know. I can't say definitively yes or no, so that's fair. So when he says that's fair, that's not actually him agreeing that it is a dry-bulk trailer. East's expert, who is pragmatic, provides a pretty detailed description of what a dry-bulk trailer is. It's kind of the same as like a liquid tank trailer, except it carries powder and other dry materials. It's physically very different than this type of trailer. And the last one, in plaintiff's brief, he suggests that the issue of over-height and the risk of electrocution came in through a wonderfully leading question from counsel. In fact, it first came in in response to a wonderfully open-ended question from plaintiff's counsel. Plaintiff's counsel asked Roar if he saw any other reason not to put a step ladder, rung-style ladder and catwalk on the trailer. And in response to that very open-ended question, Roar volunteered that. Well, yeah, because when you do that, you're increasing the height when the trailer is lifted, you know, tipped up, and you can run the risk of electrocutions. So turning to the legal issues. You know, if you read, as I'm sure you did, a plaintiff's brief, you'd think that there are a half-dozen different issues raised in this case. These are all factors related to one issue, whether or not this is an unreasonably dangerous product under the risk utility test. The fact that there are a half-dozen different factors that are relevant under that test doesn't make them six separate independent issues. Excuse me. Compliance with government regulations and with standards of the industry are one factor under the risk utility test. And the appellate court got that wrong. The trial court correctly noted that the OSHA regulations, the ANSI standards, the TTMA recommended practices, none of these apply to the dump trailer in question in this case. But the appellate court said, well, there's case law that says we can consider government regulations, therefore, they're relevant and can be considered. This court's precedent makes clear that we can consider government regulations in such matters, but only if they're relevant in terms of the time and conduct involved. And plaintiff essentially concedes that these standards aren't admissible substantively. They kind of make a two-paragraph reference suggesting there's a question of fact about whether OSHA applies, but, of course, that's a legal question. But instead, they turn to this argument that the standards are admissible as the basis for their expert's opinion. There are multiple problems with that argument. Perhaps the most important problem is that they don't say which factor under the risk utility test the expert's testimony relying on these standards could possibly be related to. It can't be related to the factor of compliance with government and industry standards because the standards don't apply. The argument that these standards and criteria are relevant as a basis for the expert's opinion is also forfeited. This issue never came up in the trial court, never came up in the appellate court. Plaintiff never suggested that, oh, this was just, you know, supporting material for his expert's opinions. In fact, he relied on the standards of substantive evidence. And if you go back to the trial court response, there's only a single reference to Gary Hutter, the expert in that response, and it's a citation in reference to a single point about, you know, a particular factor. So once it's clear that the appellate court erred in determining that these factors were relevant and admissible as far as establishing an unreasonably dangerous product defect, we have to go back to the beginning, back to square one with the risk utility factor, and weigh those factors. We weigh those factors that properly remain to determine whether there is legitimately an issue to send to the jury about whether this is an unreasonably dangerous product defect. Excuse me. Of all the factors that remain, none supports the position that this is an unreasonably dangerous defect. One of the most important factors is the ability to use this product for a period of time without injury. Well, we know that Plaintiff himself used this product for something like six months, hundreds of times, three to six times a day, without injury. We know that this step configuration has been standard in the industry for at least 1972. There is no indication that injuries are happening on any kind of regular basis or at all. There is no evidence of anyone other than Plaintiff in this case falling from this step configuration. Under the risk utility test, the Court also considers the Plaintiff's awareness of the danger. And that kind of ties into the duty to warn. Is he aware of the danger or is it dangerous because he should have been made aware of the danger? And in this case, to the extent that the ladder system was dangerous and climbing over that tarp cap was dangerous, Plaintiff knew. He testified himself that he repeatedly asked his employer to provide some additional features, some additional safety features. There's no question he was aware of the danger. The custom and practice in the industry. Again, these steps, this type of configuration, has been the custom and practice for 30, 40 years. Robert Edmire of Barge Trailer and of Trail Quest said that these steps have worked good for them on their trailers for 20 years. Plaintiff's ability to avoid the danger. We identified a number of ways that Plaintiff could have avoided the danger presented of climbing down this step configuration. First and foremost is not climbing over that two and a half foot tarp cap to try and climb down over those front bulkhead steps. He could have instead gone to the rear driver's side steps, which his employer said he expected the drivers to do, where there would have been that handhold at the top, the top edge of the trailer to climb down. Was that handle covered by the tarp? At the rear, no. So the tarp wouldn't be on when he's climbing in. There's a different tarp cap there, but there's no evidence that the tarp cap in the back covered the side where the steps were on the rear. Does that make sense? He could also have, as he did after his fall, simply not have loaded the trailer so high. On the day of his fall, when he preloaded it for the next day, he had it loaded to 50 cubic yards instead of 70. That way he didn't have to climb into the trailer to break down the load, to level the bows, the tarp bows that came over the top. There's no reason he couldn't have done that every single trip and never have needed to climb into the trailer at all. And finally, consumer expectations are a factor under the risk utility test. And I do want to make clear, these can be, consumer expectation can be a freestanding test, but once risk utility factors come into play, consumer expectations isn't a separate independent basis for finding an unreasonably dangerous product, it's simply one of the many factors that gets weighed under the integrated risk utility test. And in this case, there's no evidence that these steps were anything other than compliant with consumer expectations. The consumer in Barb's trailer said it was happy with the steps as received, that they'd worked well for them for 20 years. Now, even if this Court were to find that under the risk utility test this were an unreasonably dangerous product or that there were a question of fact as to that, he still cannot be held responsible because the danger was interjected by the addition of that tarp cap. That tarp cap was a post-sale modification, and it was not, under this Court's precedent, or under the appellate court's precedent, foreseeable to East, because to be foreseeable in this product liability context, it has to be a modification that can be easily made by the consumer and which the manufacturer has reason to anticipate that the consumer will make that, or the user, I'm sorry, not the consumer, the user, will make that modification. Well, in this case, the user, Dale Gillespie, didn't make that modification at all. The modification was made by Penn's Trucking, a sophisticated trucking repair company. It wasn't a simple modification. This isn't, you know, removing a safety shield or a safety latch. This is installing and bolting a full tarp cap and custom-fitting it to this particular trailer. And Jim Burr talks. Kagan. You started by saying that there were a number of legal issues in this case. This is a review of a motion for summary judgment. Correct. So really the legal issue is whether there are questions of material fact here. You're talking now about foreseeability. That sure sounds like something that juries decide rather than a decision based on a legal principle. So two points to that. First, in the context of foreseeable modifications, this Court has set forth the standards that, you know, reasonably foreseeable that a user can easily make the modification. So, although foreseeability is typically a jury question where no reasonable jury could find that the user could easily make this modification and that the user, the truck driver, Gail Gillespie, would have incentive to do so, there's no basis for a jury to find it was a foreseeable modification. Not one that East can be held responsible for. Because we really can't expect a manufacturer to anticipate all the different types of modifications that a purchaser may make post-sale. In this case, we know that purchasers frequently install TARP systems. We know that there are hundreds of different TARP and TARP cap configurations available on the market. We know in this case that there are two different types of TARP cap installed on the front bulkhead where the accident or incident occurred, and a separate TARP cap installed at the rear of the trailer, which was custom fabricated by Pence Trucking itself. Expecting a manufacturer to anticipate which type of modification a consumer is going to make, how they're going to make that modification, what new dangers might or might not be introduced, it's just a burden that we really can't expect manufacturers to live up to. You know, counsel, on the risk utility test, apart from the standards and apart from the installation of the cap, the appellate court found a question of material fact on the question of alternative feasible design, safer design, as presented by the plaintiff's expert. Thank you. Isn't that enough to get past summary judgment? No, because the court, for one, even if the appellate court was correct in finding that that factor weighs in favor of plaintiff, the court weighs all of the factors. So the fact that one factor weighs in favor of the plaintiff isn't enough to avoid on balance does not demonstrate an unreasonably dangerous product. Now, I do – I'm glad you mentioned that, because the evidence really doesn't show a foreseeable, safer alternative design. Gary Hutter talks about, well, there's all sorts of ladders that comply with OSHA. Well, first, the only basis for saying that this is safer is reliance on OSHA or the other standards, which, as I've explained earlier, are not admissible. But in addition, he never put – actually designed an alternative design. He never drafted how this would be done in a feasible way. Now, he talks about, well, a rung-style ladder could be fastened, and typically when you fasten that type of ladder to a trailer, it would be 12 inches from the top But he had no idea how many tarp cap systems that a consumer might install post-sale that installation would potentially interfere with. The reason East changed its manufacturing protocol to put that top step 19 inches down is because a number of tarp cap systems that customers might install come down 18 inches, and if – you know, if you've got a step or a ladder or something in the way, that tarp's not going to lock down. It's not going to seal, and it's not going to be effective. So there's no indication that an alternative design involving a rung-style ladder could installed in a way that would not interfere with the types of systems customers might choose to install or would want to install. And of course, if you put it there and it interferes with the tarp cap they want to install, now they've got to, you know, saw this off the front or unbolt it, and it creates new problems. And again, there's no evidence that putting that rung-style ladder there would have made the trailer any safer. That top step might provide a handhold, but from the way Dale Gillespie describes coming down off that tarp cap, to use that as a handhold, he's leaning headfirst over the bulkhead of the trailer to grab onto that step. That's pretty obviously not safe, and a number of the witnesses testified that would not be a safe way to exit from the trailer. If there are no further questions, I would ask this Court to reverse the appellate court and affirm the judgment of the trial court. Thank you, Ms. Johnson. Ms. Johnson. Good morning, Your Honors. Michael Raszak. I'm here on behalf of the plaintiff appellees, Dale Gillespie and his spouse. It seems a little odd to me that at this late stage it's apparently not really clear between the parties what the issue is that we brought to this Court. I thought the question in the appellate court, and it's the question the appellate court primarily focused on, was what can Mr. Hutter rely upon, what can any expert rely upon, when that expert is trying to present to the jury a basis for his opinion? And in this case, what Mr. Hutter did was to look to a number of standards.  What he said specifically was, those standards show us examples of steps that are safe. And that was at C-2215 of the record. I had to check that. And they give an idea of what a compliant ladder looks like. And the reason that you want to do that in front of the jury, obviously, is because if I say something to the Court or my opposing counsel, the first thing that anyone, any judge or any lawyer says, Mr. Rasek, what's your basis for that? And that's why this Court in Wilson v. Clark presumably allowed experts to rely upon matters like codes and regulations. And it's gone so far. I think one of the best examples is in the McShane case. In the McShane case, that was the case where the fireman had fallen to death. They allowed the use of an elevator code that wasn't even in existence at the time of the incident. And it was because it showed to the jury what should have been done and what could have been done. In this case, these pictures show you what can be done, and these standards show you what can't be done. It is up to the opponent, and it could be either side, to explain or to bring out to the jury. Look, ladies and gentlemen, my expert said these standards weren't applicable to this product. And that's what cross-examination is for. In this case, my understanding from the brief was their main complaint was that they would have to manufacture a product in conformance with a standard that did not apply to that product. And my response to that, in my whole plain language, is simply that this is a very large, relatively complex product. We're focused only on one small part of that product, the geometry of the steps, and then the question of what you can do to provide a safer design, the other three points. My point is simply that when an expert looks at something like a standard, he uses that to show the alternative safe design. I thought that's what this Court wanted to be done in the Schultz case. The Schultz case is the railroad case where the Court said we're going to apply OSHA, even though that's not railroad property, and we're going to apply OSHA in this situation, even though it's not an employer-employee situation. We're going to apply OSHA in that wall. It was a wall that should have had a rail on it. So we're going to apply that. We're going to let the jury hear from the expert what should have been there to make it safer. And the only difference in this case is there you had a wall and here you have a trailer. The only reason that the expert is looking at these, at this point, is looking at these various codes and regulations is to show the jury what could have been done different and to show the jury that he just did not pull this out of thin air. That's critical to an expert's credibility, the word I'm looking for in front of the jury. Does relevance to the particular product have any place in the analysis? And that would be the Court said it's got to be relevant in terms of time and has to be material to it. In this instance, it's a question I can't say yes or no. I can envision situations where it might not be material or relevant. And this Court, in the Ruffiner case, said we don't think it's going to work in that case because that's the movable pilot house case. The Court said we don't think the plaintiff thought it was relevant. The relevance, the materiality here, I believe, was shown by Mr. Hutter, who said this is what a safe step looks like. These are what the safe dimensions should be. And he explained, unlike the expert in Ruffiner, he explained that if a step is safe here, why would the safe in design not also be safe in some other use? A step is a step. Now, if the step that was in the standard, if that size wouldn't fit, wouldn't work, well, that would surely come out on cross-examination and might even lead to a motion to limit it. He said, no, you can't do that because that's impossible. But Mr. Hutter said it's possible here. Nobody disagreed with the concept that that step size cannot be changed in terms of its width, meaning this way, its width this way, or maybe most importantly, how far the step is from the trailer. Recall that this step is only about that far from the trailer, so that that was Mr. Hutter's criticism. When the plaintiff, when any work stepped on, he basically could put his toe on the step, and that's just not safe. Sotomayor, is the question whether the regulation has to be admissible, or is it the question whether or not it has to be reasonably, the expert can reasonably rely on that information? I believe that is the question. In this case, there's two separate uses. The expert can rely upon anything. In the Simmons case, the Court allowed the expert to rely on hearsay. But the second question, and that would probably be determined at trial, can that regulation come into evidence, as it would be under, you know, using IPI 6001? That's a separate question. That was not a question that I saw ruled upon here. The question here was whether or not can an expert rely upon it. Whether or not it comes into evidence may well depend on further developments in this case. I understand it. Discovery is not necessarily complete. And there may be reasons why it should or should not come into evidence, in which case it would become a binding standard. But I don't believe that's the question that I see before the Court. Well, counsel, relevance is a little different than hearsay in the example you gave. If a standard is inadmissible because it is irrelevant, tell me how it is reasonable, then, for an expert to rely upon something that's irrelevant. It would be, I'm trying to think how to answer that. It would be, arguably it could be inadmissible here as evidence because it doesn't necessarily regulate this product. But there are elements of that standard that, in fact, illustrate the basis for the expert's opinion. So many things that are not admissible in the evidence, medical records frequently are not admissible in the evidence. But, in fact, the expert can rely upon it. The content of the regulation is relevant. And here, the content of the various regulations and codes looked at is relevant because it shows a proper step design. And it might not be admissible because the Court might say it does not have the effect of law because it can only, as a whole, govern the product. The question of what can come into evidence is a little bit unclear. I think the explanation in 60 and 60.01 shows that at one point this Court said a statute or a regulation could only come into evidence if it had the force of law. That's what made it relevant. Since then, there are some cases where it's come in under 60.01 anyway. The bottom line is that the content of the regulation would have to be relevant. It might not come in anyway if the statute doesn't necessarily govern the whole product. But it should come in as a basis for the expert because an expert can rely upon anything, including matters not admissible in the evidence. The other point in this case, I thought one of your honors mentioned it. There's four charges in this case. Step geometry, a ladder, and I think it's clear. It's a separate ladder that you well down to the front of the trailer. Its benefit is that it's far away from the trailer. It's got a vertical handhold, and it can run to within 12 inches at the top of the trailer. No one suggested it could not do that. They use these ladders on other trailers. That was the second one. There's no grab handle at the top. The grab handle issue is separate from the standards that the expert relied upon, and the expert said there should have been a grab handle, and everybody seems to agree there should have been a grab handle. That's what makes it safe. And the fourth charge was they did not warn the purchaser to put the grab handle up there if they put a tarp cap on. There was a discussion of, well, maybe things don't work with other tarp covers. There was no evidence below that some tarp covers would not work with a step near the top or with the grab handle. I'm sorry. That was beyond the scope of the summary judgment process, as I understand it. What we looked at solely here was our expert and his opinions. Their expert did not really argue with our expert. That might have some bearing on your question. Their expert did not – nobody's contradicted our expert. When he said what's in here will make it safer, and that should make it relevant. I would argue at trial that it's admissible as evidence. It should come in under 60.1, but I think that's premature for me to do that here. Unless the Court has further questions. I just want to make sure I'm clear on the OSHA standard that you're relying on. Is it the section 1910.23 ladders? Is that the section we're talking about in the OSHA guidelines? I hate to admit it, Your Honor. I believe that's what we're looking at. Within OSHA and the other standards, they have – and I have a limit on mine. The expert identified specific dimensions that were either in OSHA or in SAE or one of the other standards. Size. Well, the OSHA standard that I'm looking at has all those size dimensions. That's the one. But that standard also says that it applies to everything except – I mean, it specifically excludes ladders that are designed into or an integral part of machines or equipment. That's correct. Which means that at trial, it would sound like – I haven't thought that out – that we would not be able to bring that in as a 60.01 instruction as evidence. But the dimensions within it – our expert said the dimensions within OSHA there show a safe step design. And if it's safe there, nobody has said it would not be safe in some other use. If you need a step that's this far from wherever you're stepping, wherever it's mounted to, if the distance in OSHA is this much, then why would the same distance not apply in some other circumstance? And that's what our expert said. He said there's no reason why a safe distance in that situation in OSHA would not also be an example of a safe distance in something else. It might not be mandated. That's up to them to decide what to do. But nonetheless, it's still an example of a safe distance, and that would stand for each one of the dimensional aspects of OSHA and the other regulations. And as I said, the other charges have to do with the ladders and with the grab handle, and those are not actually part of the regulation discussion because the expert said, I look to the admissions here that ladders are possible. I look to the fact that they knew that the cover was going to be there. I look to the sales literature. I look to custom practice in the industry to support the other three charges. And unless there are further questions, we ask that the Court affirm. Thank you. Thank you, Mr. Ratzak. Mr. Ratzak. So plaintiff's counsel has argued that he thought the issue all along was what an expert can rely on as a basis for the expert's opinions. I am at a complete loss as to why he thought that was the issue all along. That was never mentioned at any time in the trial court. There's no reference to Wilson v. Clark. There's no reference to the basis for an expert's opinion. There's no reference to Wilson v. Clark in the appellate court, or to whether this issue turns on what an expert can rely on. And, in fact, if the issue had been what an expert can rely on, that's a question of the admissibility of evidence. That's an issue for the discretion of the trial court. That's not a question of law. And there's no place in the appellate court's decision where it suggested or held that it would be an abuse of discretion to bar the expert from relying on these standards and regulations. If the standards and regulations don't apply to the product, whether as substantive evidence or as the basis for an expert's opinion, as Justice Burke pointed out, there's no relevance under the risk utility test to establishing whether the product was unreasonably dangerous. The expert's opinion has to be somehow directed toward the factors under the risk utility test. That test doesn't suggest that a court can find an unreasonably dangerous design defect because an expert simply concludes that it's dangerous. You have to go through those factors, and you have to identify what factor the expert's opinion is relevant to. What is he establishing? What is he showing with his testimony? And the only thing that Gary Hutter is attempting to show with testimony relying on those standards is that the trailer and the ladder and step system on the trailer did not comply with regulations and standards. That's not admissible because these standards just don't apply to this product. There's no other basis for admitting testimony relying upon or regarding or in any way related to the regulations and standards. As far as the question of whether relevance in time and conduct is going to be, like, oh, well, can you decide with this step that is defined under the ANSI standards would it fit here, wouldn't it fit here, that's not what Rufiner said. Rufiner said this is a standard for land-based facilities. The product we're talking about is a tugboat. It's two different contexts. We just don't apply the standard because the standard doesn't apply to this particular product. As far as McShane and the idea that, like, oh, well, even a post-accident code change could be relevant, arguably, I would disagree with McShane's conclusion on that in that particular case. But regardless, McShane dealt with a negligence claim. The degree of relevance for establishing a standard can be relevant to a negligence claim to establish the defendant's standard of care. That's not what we're talking about here. We're talking about a strict product liability claim, and the only way the standards become relevant is if they demonstrate that factor of compliance or noncompliance with government regulations or voluntary industry standards. They're not relevant in this case. Unless the Court has further questions, I ask that you reverse the appellate court and affirm the trial court. Thank you, Ms. Jansen. Case number 125262, Dale Gillespie v. Robert Edimer East Manufacturing Corporation, will be taken under advisement as agenda number 10. Thank you, Ms. Jansen and Mr. Ratzak, for your arguments.